UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

EMPLOYERS INSURANCE COMPANY
OF WAUSAU,

                       Plaintiff,

     v.                                                 8:05-CV-1563 (LEK/RFT)

CROUSE-COMMUNITY CENTER, INC,

                       Defendant.
_____

LAWRENCE E. KAHN
Senior United States District Judge

## DECISION AND ORDER

        Plaintiff Employers Insurance Company of Wausau ("Plaintiff") commenced the instant action against Defendant Crouse-Community Center, Inc.("Defendant") on December 15, 2005, alleging that Defendant failed to pay certain premiums owed pursuant to a Workers' Compensation Insurance Policy issued by Plaintiff to Defendant. Defendant asserted counter-claims of breach of fiduciary duty, breach of contract, and unjust enrichment arising out of the same insurance policy. By Decision and Order dated April 25, 2007, the Court dismissed Defendant's counterclaim alleging breach of fiduciary duty. Presently before the Court are: (1) Plaintiff's Motion for summary judgment (Dkt. No. 42); (2) Defendant's Motion for summary judgment (Dkt. No. 38); and (3) Plaintiff's Motion to exclude Defendant's expert (Dkt. No. 42).

**I.        BACKGROUND**

Plaintiff issued a Workers' Compensation and Employers Liability Insurance policy to Defendant for the period from June 30, 1995 to June 30, 1996 (the "Policy").  Pursuant to the retrospective premium agreements and endorsements, the Policy premium was based, in part, upon payments made and reserves set for claims under the Policy.[1]  In August 1995, one of Defendant's employees (the "claimant") was injured on the job.  A workers' compensation claim was submitted on behalf of the claimant. Because of the possibility that the claimant suffered from a pre-existing injury, Plaintiff protectively applied for Second Injury Fund benefits concerning the claimant on November 28, 1995.[2]  The application form listed the claimant's prior conditions as carpal tunnel surgery, obesity, and hypoglycemia.  On March 6, 1996, Plaintiff submitted a second application form concerning the claimant.  This form included pulmonary embolism and prior costochondritis as additional prior conditions.

In February 1998, Plaintiff attended a "pre-trial" conference concerning the claimant with a representative of the Special Funds Conservation Committee.  Plaintiff was directed to have a consultant address whether there existed a prior permanent physical impairment.[3]  Plaintiff was also

---

[1] Under a retrospective premium plan, "premiums are dependent upon the insured's claims experience during a policy period." Commissioners of State Ins. Fund v. Photocircuits Corp., 20 A.D.3d 173, 176 (1st Dept. 2005).

[2] The Second Injury Fund is the name given to N.Y. Workers' Compensation Law § 15(8) ("Disability following previous permanent physical impairment.").  "The purpose of the law is to facilitate the employment of persons with prior disabilities by relieving employers and carriers of excess compensation costs due to previous permanent physical impairment regardless of knowledge on the part of the employer as to the existence of that impairment." See http://ww3.nysif.com/SafetyRiskManagement/RiskManagement/LimitingLiability/SecondInjury FundReopenedCasesFund.aspx.  "This section provides that the Special Disability Fund, rather than the general fund allocated for workers' compensation claims, reimburses claimants with preexisting injuries, and limits the employer's exposure . . . ." Photocircuits Corp., 20 A.D.3d at 181.

[3] N.Y. Workers' Compensation Law § 15(8)(d) applies to employees who sustain a work-related injury and also have a prior "permanent physical impairment."  The phrase "permanent physical impairment" is defined to mean "any permanent condition due to previous accident or disease or any congenital condition which is or is likely to be a hindrance or obstacle to employment." Id. at §15(8)(b).

directed to have a consultant address whether the claimant suffered a permanent disability caused by a prior permanent physical impairment together with the workplace accident that is materially and substantially greater than that which would have resulted from the workplace accident alone.[4] According to Plaintiff, it reviewed the medical records and, notwithstanding the claimant's prior injuries, was unable to conclude that the claimant suffered a prior permanent physical impairment within the meaning of § 15(8)(b).[5] On March 5, 1999, Plaintiff withdrew the application for Second Fund benefits.

Plaintiff contends that it withdrew the application on the grounds that there was insufficient medical evidence to establish a pre-existing permanent physical impairment within the meaning of N.Y. Workers' Compensation Law § 15(8). Defendant argues that Plaintiff failed to property investigate the claim, failed to keep its medical consultant fully informed of the claimant's conditions, and withdrew the application without justification. Defendant maintains that Plaintiff should have pursued Second Injury Fund benefits and that, if it had, it would have recovered Second Injury benefits, which would have had the effect of reducing premiums paid by Defendant.

In February 2005, Plaintiff issued to Defendant the Ninth Retrospective Premium and Dividend Adjustment for the Policy. In January 2006, Plaintiff issued to Defendant the Tenth Retrospective Premium and Dividend Adjustment for the Policy. Defendant has not paid any of the

---

[4] N.Y. Workers' Compensation Law § 15(b)(d) provides that monies may be obtained from the special disability fund where "an employee . . . who has other permanent physical impairment incurs a subsequent [workplace] disability . . . resulting in permanent disability caused by both conditions that is materially and substantially greater than that which would have resulted from the subsequent injury . . . alone. . . ."

[5] Defendant disputes this characterization of the records and contends that the medical records support a finding of permanent physical impairment.

obligations resulting from these retrospective adjustments. This action, filed on December 15, 2005, seeks to recover for losses associated with and arising from Defendant's non-payment.

## II.   DISCUSSION

### a.   Standard of Review

Federal Rule of Civil Procedure 56 provides that summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). In applying this standard, courts must "'resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment.'" Brown v. Henderson, 257 F.3d 246, 251 (2d Cir. 2001) (quoting Cifra v. General Electric Co., 252 F.3d 205, 216 (2d Cir. 2001)). Once the moving party meets its initial burden by demonstrating that no material fact exists for trial, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (citations omitted). Rather, the nonmovant "must come forth with evidence sufficient to allow a reasonable jury to find in her favor." Brown, 257 F.3d at 251 (citation omitted). Bald assertions or conjecture unsupported by evidence are insufficient to overcome a motion for summary judgment. Carey v. Crescenzi, 923 F.2d 18, 21 (2d Cir. 1991); Western World Ins. Co. v. Stack Oil, Inc., 922 F.2d 118, 121 (2d Cir. 1990).

### b.   Liability for Insurance Premiums

Plaintiff seeks to recover insurance premiums on the policies issued to Defendant. To establish a prima facie case for liability for payment of premiums, Plaintiff must show: (1) the issuance of a policy to the insured; and (2) the computation of the earned premium by means of an audit of the insured's books and records at the end of the policy period. Family Coatinfs, Inc. v. Michigan Mut. Ins. Co., 170 A.D.2d 816, 817 (3d Dept. 1991). If the insurer can establish a prima facie case, the burden shifts to the insured to come forward with evidence that it did not request or receive the benefit of the insurance coverage. Id.

Here, the undisputed evidence demonstrates that Plaintiff issued a workers' compensation policy to Defendant and that Defendant received the benefit of the insurance coverage. Further, Plaintiff has submitted a calculation of the premium by means of the requisite audit. Defendant has not raised a triable issue of fact concerning the calculation of the amount of premiums due. Accordingly, Plaintiff has established a prima facie case of Defendant's liability for payment of the premiums.

Defendant claims that it is not responsible for the full amount of premiums because Plaintiff failed to properly pursue the claim submitted to the Second Injury Fund, thereby breaching its obligations under the contract and its duty of good faith and fair dealing. As a general rule, "New York does not recognize breach of the implied obligation of good faith and fair dealing as a defense to a claim that the insurer's deficient investigation or mismanagement of a claim file resulted in an increased retrospective premium." Photocircuits Corp., 20 A.D.3d at 182; see also Liberty Mut. Ins. Co. v. Precision Valve Corp., 402 F. Supp. 2d 481, 489 (S.D.N.Y. 2005); Liberty Mut. Ins. Co. v. Thalle Const. Co., Inc., 116 F. Supp. 2d 495, 501 (S.D.N.Y. 2000). The investigation of claims typically is "a matter of business judgment within the discretion of [the insurer's] management." Ins. Co. of Greater New York v. Glen Haven Residential Health Care, 253 A.D.2d 378 (1st Dept. 1998).

This general rule is by no means absolute, however. "[I]n the ordinary course[, this rule] would provide plaintiff with immunity from the type of defense [the defendant] is asserting here. However, [the rule] cannot be read to give the [plaintiff] a blanket excuse for a failure to even minimally comply with its basic contractual obligations to perform in a reasonable manner." Id. To overcome Plaintiff's immunity, the insured must show something "more than mere negligence." Photocircuits Corp., 20 A.D.2d at 182-83. The insured must demonstrate "that the insurer's conduct constituted 'gross disregard' of the insured's interests – that is, a deliberate or reckless failure to place on equal footing the interests of its insured with its own interests. . . ." Liberty Mut. Ins. Co. v. Precision Valve Corp., 402 F. Supp. 2d 481, 489 (S.D.N.Y. 2005).

"To obtain reimbursement pursuant to [Workers' Compensation Law § 15(8)], an employer must show that the claimant had a preexisting permanent impairment that hindered job potential, a subsequent injury arising out of and in the course of employment, and a permanent disability caused by both conditions materially and substantially greater than what would have been caused by the work-related injury alone." Sturtevant v. Broome County, 188 A.D.2d 893, 893-94 (3d Dept. 1992). Here, there is evidence in the record that Plaintiff handled twenty claims under the policy. Defendant disputes Plaintiff's handling of one of those claims. In handling the claim, Plaintiff gathered medical evidence and retained physicians to conduct independent medical examinations. The record evidence shows that the claimant suffered from certain per-existing injuries and that some of Plaintiff's employees believed that obtaining Second Injury Fund benefits was "likely" and that they wanted to "get 15-8 conceded."[6] See Pl.'s Exs. 1-6. There also is evidence from examining physician Dr. Nastasi that the claimant had a "12% scheduled loss of use of each hand" caused by the bilateral carpal

---

[6] This appears to be a reference to trying to get benefits under § 15(8) conceded by the Second Injury fund.

tunnel syndrome, she swims and has had no injuries, she has no arm symptoms, she "states that on 8/7/95 she had been working without symptoms," and that additional medical information would be needed "[b]efore deciding whether or not this patient's injury is due solely to the accident of 8/7/95, or whether it represents an aggravation of a pre-existing condition. . . ." See Def's Ex. 1. Other record evidence includes doctors' reports completed after the claimant's injury. In response to the question asking for "any history or evidence of pre-existing injury, disease or physical impairment," all of these reports state "no prev hx," "none," "no," or were left blank. See Pl.'s Ex. 10. There is no evidence in the record that, prior to the 1995 injury, the claimant returned to work with restriction.

      In light of the foregoing, and viewing the evidence in the light most favorable to the non-movant, the Court finds that no reasonable trier of fact could conclude that Plaintiff acted with gross disregard of Defendant's interests. While Plaintiff had evidence of the claimant's prior medical history and its ultimate determination concerning whether the claimant was eligible for Second Injury Fund benefits may have been wrong, it had evidence upon which it could reasonably be concluded that she did not have pre-existing injuries that hindered, or were likely to hinder, her job potential. See Rosa v. Britt Fast Freight, Inc., 266 A.D.2d 603 (3d Dept. 1999) (denial of benefits affirmed where there was insufficient evidence that pre-existing heart disease hindered job potential); Chadwick v. Mallinkrodt Anesthesia Prods., 264 A.D.2d 953 (3d Dept. 1999) (affirming denial of benefits where "[t]here is . . . no evidence that claimant's preexisting condition hindered her job potential in any way . . . [and] [the claimant] testified that . . . she returned to work . . . with no restrictions and that . . . she was having no problems with either her neck or wrist."); Brigandi v. Town & Country Linoleum & Carpet, 221 A.D.2d 728 (3d Dept. 1995) (same as to heart disease); Sturtevant, 188 A.D.2d at 894 (same as to pre-existing diabetes); Bishop v. Remlap Const., 181 A.D.2d 938 (3d Dept. 1992) (same as to congenital

narrowing of the spinal canal). As noted, the claimant advised Dr. Nastasi that she had been working without symptoms on the date of the accident. A physician report given to Plaintiff communicated that, prior to the injury, the claimant was a physically active and productive individual. See Pl.'s Ex. 11. Other medical reports indicate that she had no pre-existing injuries. Further, there is no evidence identifying any restrictions placed on the claimant's ability to work because of any prior injuries or any other evidence suggesting that the claimant's prior injuries hindered, or were likely to hinder, her job potential. Thus, while it may be argued that Plaintiff negligently handled the claim, there is plainly insufficient evidence upon which it reasonably can be concluded that Plaintiff acted with gross disregard of Defendant's interests. Accordingly, Plaintiff is entitled to summary judgment on its claims seeking payment of premiums, and Defendant's motion for summary judgment on the breach of contract claim must be denied.[7]

Defendant's claim for unjust enrichment must be dismissed because such a claim is not cognizable where the matter is controlled by an enforceable contract. See Goldman v. Metropolitan Life Ins. Co., 5 N.Y.3d 561, 572 (2005). Here, the calculation of premiums is determined in accordance with the terms of the insurance policy. As such, the unjust enrichment claim must be dismissed. Id. ("Given that the disputed terms and conditions fall entirely within the insurance contract, there is no valid claim for unjust enrichment.").

## III.     CONCLUSION

Based on the foregoing discussion, it is hereby

---

[7] Defendant's claim for breach of fiduciary duty was dismissed by prior Order of the Court.

- 8 -

**ORDERED**, that Plaintiff's Motion for summary judgment (Dkt. No. 42) is **GRANTED** IN ITS ENTIRETY; and it is further

**ORDERED**, that Plaintiff's Motion to strike (Dkt. No. 42) is **DENIED**, without prejudice, as moot in light of the foregoing; and it is further

**ORDERED**, that Defendant's Motion for summary judgment (Dkt. No. 38) is **DENIED** IN ITS ENTIRETY; and it is further

**ORDERED**, that the Plaintiff is directed to file a Motion for damages **within 30 days**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Order on the parties.

**IT IS SO ORDERED.**

DATED:      January 29, 2010
            Albany, New York

_____
Lawrence E. Kahn
U.S. District Judge